SIMPSON THACHER & BARTLETT LLP
Harrison J. Frahn IV (CA Bar No. 206822)
hfrahn@stblaw.com
Jason M. Bussey (CA Bar No. 227185)
jbussey@stblaw.com
2475 Hanover Street
Palo Alto, California 94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

SIMPSON THACHER & BARTLETT LLP
Peter C. Thomas (*pro hac vice* application forthcoming)
pthomas@stblaw.com
Janet M. Whittaker (*pro hac vice* application forthcoming)
janet.whittaker@stblaw.com
900 G Street, N.W.
Washington, D.C. 20001
Telephone: (202) 636-5500
Facsimile: (202) 636-5502

*Attorneys for Petitioner Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| APPLE INC., <br><br> Petitioner, <br><br> vs. <br><br> BYD PRECISION MANUFACTURING CO., LTD. and BYD COMPANY LIMITED, <br><br> Respondents. | Case No. 3:15-cv-04985 <br><br> **PETITION FOR ORDER COMPELLING ARBITRATION AND FOR INJUNCTIVE RELIEF PENDING ARBITRATION** |

Petitioner Apple Inc. ("Apple") files this Petition for an Order Compelling Arbitration and for Injunctive Relief Pending Arbitration ("Petition") against respondents BYD Precision Manufacturing Co., Ltd. ("BYD Precision") and BYD Company Limited ("BYD" and, together with BYD Precision, "Respondents"), as follows:

**NATURE OF THE PETITION**

1. In or around June 2014, Petitioner Apple (a United States company) and Respondent BYD Precision (a Chinese company) entered into an "Amended & Restated Master Development and Supply Agreement Between Apple and BYD Company Limited," dated June 3, 2014 (the "2014 MDSA").[1] The 2014 MDSA amends and restates an earlier "Apple Inc. Master Development and Supply Agreement," dated May 19, 2011, entered into by and between Apple and BYD (the "2011 MDSA" and, together with the 2014 MDSA, the "MDSAs").[2]

2. Under the 2014 MDSA, BYD and BYD Precision agreed, *inter alia*, not to assert any claims for infringement of intellectual property rights against, among others, Apple or Apple's related entities, distributors, or suppliers. BYD Precision also agreed to guarantee BYD's adherence to the agreement not to assert such patent infringement claims.

3. In or around April 2015, in direct contravention of this express agreement not to assert intellectual property claims against Apple or Apple's partners, BYD filed twin suits in the Shenzhen Intermediate People's Court (the "Chinese Patent Litigation"), alleging that the antennae in the iPhone 6 Plus and certain iPad Mini products infringed two BYD patents.[3] BYD named as defendants not only one of Apple's indirect wholly owned subsidiaries, Apple Electronic Products Commerce (Beijing) Co., Ltd., Yitian Shenzhen Branch ("Apple Beijing"), but also four of Apple's direct and indirect Chinese suppliers, and one of Apple's Chinese

---

[1] A copy of Apple's 2014 MDSA is attached as Exhibit 5 to Exhibit A.

[2] A copy of Apple's 2011 MDSA is attached as Exhibit 6 to Exhibit A.

[3] Complaint dated April 22, 2015 by BYD Company Limited against Defendants Apple Electronic Products Commerce (Beijing) Co., Ltd., Yitian Shenzhen Branch, *et al.*, in the Shenzhen Intermediate People's Court, alleging infringement of BYD Company Limited's Patent No. 201010117125.4; and Complaint dated April 22, 2015 by BYD Company Limited against Defendants Apple Electronic Products Commerce (Beijing) Co., Ltd., Yitian Shenzhen Branch, *et al.*, in the Shenzhen Intermediate People's Court, alleging infringement of BYD Company Limited's Patent No.01410040525.8.

1   distributors.  In these suits, BYD seeks an order requiring all six defendants to both cease

2   allegedly infringing conduct and destroy allegedly infringing products.[4]

3           4.   As a result of the Chinese Patent Litigation, on or around October 23, 2015,

4   Apple commenced an arbitration against BYD and BYD Precision pursuant to the arbitration

5   agreement in the 2014 MDSA.  The broad arbitration agreement requires that all disputes arising

6   out of or relating to the 2014 MDSA be finally resolved by arbitration in San Francisco under the

7   Rules of Arbitration of the International Chamber of Commerce ("ICC").

8           5.   Apple brings this petition pursuant to the Federal Arbitration Act ("FAA"),

9   9 U.S.C. § 1 *et seq.*, including the FAA's provisions incorporating the Convention on the

10  Recognition and Enforcement of Arbitral Awards ("New York Convention"), 9 U.S.C. § 201 *et*

11  *seq.*, for (1) an order compelling BYD and BYD Precision to arbitrate the parties' dispute under

12  the 2014 MDSA in accordance with the 2014 MDSA's arbitration agreement, and (2) provisional

13  relief in aid of the arbitration and, in particular, to preserve the *status quo* pending a final

14  determination of the parties' dispute by an arbitral tribunal.

15          6.   This Court has jurisdiction in relation to Apple's petition to compel

16  arbitration pursuant to 9 U.S.C. § 203.  In accordance with 9 U.S.C. §§ 4 and 206, this Court may

17  direct that arbitration take place in accordance with an agreement in writing by parties to settle

18  their disputes by international arbitration, where one of the parties fails, neglects, or refuses to

19  arbitrate under that agreement.  The 2014 MDSA contains an express written agreement to

20  arbitrate disputes arising thereunder.  The dispute between Apple and the Respondents concerning

21  BYD's non-assert obligations and BYD Precision's obligations to guarantee BYD's performance

22  of its non-assert obligations fall under the arbitration agreement in the 2014 MDSA.

23          7.   Ancillary to its power under the FAA to compel arbitration, this Court may

24  issue preliminary injunctive relief to preserve the meaningfulness of arbitration by preventing a

25  party from irreversibly altering the *status quo*.  Any award in the ICC Arbitration may be rendered

26  ineffectual without appropriate injunctive relief from this Court.  Accordingly, if BYD is not

27

28  [4] English translations of the complaints are attached as Exhibit B.

prevented immediately, and pending a final determination in the arbitration, from continuing the Chinese Patent Litigation, Apple and Apple's supply chain may suffer serious disruption. Such disruption will irreparably harm Apple, Apple's reputation and goodwill, and the millions of consumers and businesses who demand Apple's high-end innovative products.

**PARTIES**

8.  Petitioner Apple Inc. is a corporation organized under the laws of California, with its principal place of business at 1 Infinite Loop, Cupertino, California 95014, United States. Apple is a leading personal technology company, offering innovative hardware devices such as the iPhone, the iPad, the Mac, and the Apple Watch. Apple's three software platforms—iOS, OS X, and watchOS—provide seamless experiences across these devices and offer users additional services including the App Store, Apple Music, Apple Pay, and iCloud.

9.  Upon information and belief, Respondent BYD Precision Manufacturing Co., Ltd. is a company organized and existing under the laws of China, with its principal place of business at No. 3001 Baohe Road, Baolong Industrial Town, Longgang Shenzhen, 518117, China.

10. Upon information and belief, Respondent BYD Company Limited is a corporation organized and existing under the laws of China, with its principal place of business at No. 3001 Hengping Road, Pingshan, Shenzhen, 518118, China. BYD is the parent and controlling shareholder of BYD Precision, in which it holds an indirect interest of approximately 65.76%.[5]

11. As the parent of BYD Precision, BYD is a "Related Entity" of BYD Precision under the definition of "Related Entities" set forth in Attachment 1 to the 2014 MDSA. BYD Precision and BYD are collectively referred to as the "Respondents."

12. Upon information and belief, BYD and its subsidiaries are engaged in three major businesses: (i) automobiles, including traditional fuel-powered vehicles and new-energy vehicles; (ii) handsets, including component production and assembly; and (iii) rechargeable batteries and photovoltaic technology, including lithium-ion, nickel, lithium ferrous phosphate,

---

[5] BYD Company Limited, 2014 Annual Results Announcement, at 88 [hereinafter BYD Annual Report], available at http://www.hkexnews.hk/listedco/listconews/SEHK/2015/0420/LTN20150420882.pdf. A copy of the BYD Annual Report is attached as Exhibit 1 to Exhibit A.

and solar battery products.  During 2014, the overall revenue of BYD and its subsidiaries was approximately RMB 55,366 million, or well over U.S.$ 8 billion.[6]

13. Upon information and belief, BYD and its subsidiaries also maintain a significant presence in the United States, including corporate offices in both Los Angeles and the greater Chicago area,[7] and an electric bus factory in Lancaster, California.[8]  In addition, upon information and belief, BYD controls a sizeable patent portfolio.  In 2013 alone, it acquired 2,099 patents internationally, ranking fifth for the year among all Chinese companies in issued patents.  As of March 2014, BYD had amassed more than 12,000 Chinese patents.[9]

## JURISDICTION, GOVERNING LAW, AND VENUE

### Jurisdiction

14. This Court has original subject matter jurisdiction over this action pursuant to 9 U.S.C. §203 because the subject matter of this petition is an arbitration agreement falling within 9 U.S.C. § 202.  Specifically, the 2014 MDSA is a commercial contract for the development and supply of goods and related services, between a U.S. company and a Chinese company.

15. Section 18.1 of the 2014 MDSA provides that the agreement is subject to Apple's "General Terms and Conditions" set forth in Attachment 2.  Apple's General Terms include a broad arbitration agreement which expressly permits Apple to seek injunctive relief and other provisional measures in support of its agreement to arbitrate in the 2014 MDSA, as follows:

> Nothing in the Agreement shall prevent either Party from seeking provisional measures from any court of competent

---

[6] BYD Annual Report, at 13–16.

[7] BYD Website, Contact Us, *available at* http://www.byd.com/service/contactus.html.  A copy of the relevant web pages is attached as Exhibit 2 to Exhibit A.

[8] BYD Website, News, California Governor Jerry Brown helps BYD showcase its breakthrough battery technology during unveiling of state's first ever long-range electric bus factory in Lancaster, California, *available at* http://www.byd.com/news/news-233.html.  A copy of the relevant web pages is attached as Exhibit 3 to Exhibit A.

[9] BYD Website, News, BYD Ranks in Top 5 for Chinese Patents Awarded, *available at* http://www.byd.com/news/news-216.html.  A copy of the relevant web pages is attached as Exhibit 4 to Exhibit A.

> jurisdiction, and any such request shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.  [BYD Precision] agrees that Apple will be irreparably harmed and monetary damages may not be adequate compensation if [BYD Precision] fails to meet its obligations hereunder, . . . and that in addition to other remedies, Apple shall be entitled to seek injunctive relief or specific performance to prevent any threatened or continued breach.  The Parties hereby waive any requirements for security for obtaining any provisional relief.

16. This Court has specific personal jurisdiction over Respondents by virtue of the arbitration agreement in the 2014 MDSA, which provides that arbitration shall take place in San Francisco, California.  Additionally, the arbitration agreement expressly acknowledges Apple's right to resort to this Court—as a court of competent jurisdiction—for the relief sought in this Petition.

17. This Court also has general personal jurisdiction over Respondents on the basis of Respondents' systematic and continuous contacts in California.  BYD maintains its North America headquarters in Los Angeles, California.  BYD, directly and/or through its subsidiaries, designs and manufactures vehicles in its California facilities, and in recent years has publicly announced the expansion of its California presence through the execution of contracts with California-based purchasers and through the hiring of additional employees in California.

**Arbitration and Governing Law**

18. Apple commenced arbitration against BYD and BYD Precision by a Request for Arbitration dated October 23, 2015, in accordance with the arbitration agreement in the 2014 MDSA.[10]

19. The General Terms and Conditions incorporated into the 2014 MDSA specify that arbitration is the exclusive means for resolving disputes relating to and arising out of the 2014 MDSA.  Specifically, the dispute resolution clause (the "Arbitration Agreement") provides in relevant part that:

---

[10]    A copy of Apple's Request for Arbitration is attached as Exhibit A.

> All disputes arising out of or related to the Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce (the "ICC Rules") by three arbitrators appointed in accordance with such rules, and shall be conducted according to the International Bar Association (IBA) Rules on the Taking of Evidence in International Arbitration.  The arbitration shall take place in San Francisco, California.  The arbitration shall be conducted in English.

20. The 2014 MDSA also contains a choice of law provision in the General Terms and Conditions providing that:

> The Agreement and the rights and obligations of the Parties shall be governed by and construed and enforced under the laws of the State of Delaware, without regard to its choice of law principles.

Accordingly, Delaware law governs Apple's claims under the 2014 MDSA.

**Venue**

21. Venue in the Northern District of California is proper because the Arbitration Agreement provides that the arbitration shall take place in San Francisco, California. Further, this matter is properly assigned to the San Francisco Division of this Court.

## THE NATURE OF THE PARTIES' DISPUTE

**The Apple-BYD Relationship**

22. Apple contracts with BYD and BYD's affiliates to develop, supply, and support components of Apple products in China.  One of the mainstays of this relationship is the 2011 MDSA between Apple and BYD, which—until its amendment and restatement in 2014—set forth the terms on which BYD developed, supplied, and supported components for use in Apple products.

23. In 2014, Apple initiated discussions with BYD executives to update the MDSA with additional terms.  BYD employees and agents were directly and actively involved in these negotiations.  Of critical importance, Apple proposed to include a provision prohibiting all BYD entities from bringing, *inter alia*, patent infringement claims against Apple and Apple's suppliers and distributors.

7

24. The 2011 and 2014 MDSAs overlap significantly in terms of substance and scope, and contain many identical provisions. The 2014 MDSA also includes an express provision by which BYD Precision, on behalf of itself and all "Related Entities" (which are also bound and include BYD), commits not to assert any claims for infringement of intellectual property rights against Apple or against, among others, Apple's distributors and suppliers for Apple products.

25. Specifically, Section 13.2(e) of the 2014 MDSA ("Non-Assert Agreement") provides that:

> *[BYD Precision], on behalf of itself, its Related Entities, and their successors in interest and permitted assigns, who shall be bound as [BYD Precision]*, hereby covenants not to assert: (i) any claims for infringement of any Intellectual Property Rights against Apple for any products or services; and (ii) any claims for infringement of any Intellectual Property Rights against Apple's direct or indirect customers, partners, consultants, independent contractors, resellers, distributors, or suppliers, but only for products (including components) or services made, used, sold, imported, exported, distributed or otherwise provided or disposed of by or for Apple.

26. The 2014 MDSA defines those entities related to BYD Precision (or "Related Entity") to mean the following:

> [A]ny other corporation . . . or other business entity that controls, is controlled by, or is under common control with an entity, where 'control' means that the entity possesses, directly or indirectly, the power to direct or cause the direction of the management policies of the other entity, whether through ownership of voting securities, an interest in registered capital, by contract, or otherwise."

Under this definition, as the parent of BYD Precision, BYD is clearly a "Related Entity." BYD Precision is indisputably controlled by BYD and is identified in BYD's December 31, 2014 Financial Statements as a connected person and one of BYD's "principal subsidiaries"—namely, "an entity (including a structured entity), directly or indirectly, controlled by" BYD such that BYD has "the current ability to direct the [entity's] relevant activities."[11]

---

[11] BYD Annual Report, at 50, 88.

**BYD is Bound by the 2014 MDSA Non-Assert Agreement**

27. As a "Related Entity," BYD is bound by the Non-Assert Agreement contained in the 2014 MDSA. The parties' intention for the Related Entity provisions, including the Non-Assert Agreement, of the 2014 MDSA to be binding upon BYD as a Related Entity, is clear. For example:

    (a) The parties' intention that BYD be bound by the 2014 MDSA is explicit in the title of that agreement—the "Amended & Restated Master Development and Supply Agreement *Between Apple and BYD Company Limited*" (emphasis added).

    (b) The history of the parties' relationship and the negotiations in relation to the 2011 and 2014 MDSAs confirm the parties' intention that BYD be bound by BYD Precision's execution of the 2014 MDSA. The preamble to the 2014 MDSA explicitly states that it has "amended and restates that certain Master Development and Supply Agreement . . . as of May 19, 2011." This is an act that—by the terms of Section 16.18 of the 2011 MDSA—could only be accomplished by BYD Precision as "an authorized signatory" of BYD.

    (c) The 2014 MDSA is peppered with references to BYD indicating BYD's connection to the agreement. For example, Attachment 7, "Step-In Rights Form," and Attachment 8, "Form Disclosure Authorization," reference both BYD and BYD Precision.

    (d) BYD employees and agents actively participated in negotiating the 2014 MDSA.

28. BYD is bound by the Related Entity provisions of the 2014 MDSA, including the Non-Assert Agreement, on several grounds including but not limited to agency and equitable estoppel.

29. BYD is bound by the Related Entity provisions of the 2014 MDSA,

1   including the Non-Assert Agreement, by virtue of its agency relationship with BYD Precision.

2   Under Delaware law, a non-signatory to an agreement is bound by the terms of that agreement

3   where the signatory acted as an agent of the non-signatory.  Here, BYD Precision acted as an

4   agent of BYD in executing the 2014 MDSA with respect to all provisions binding on its Related

5   Entities.

6       30.    BYD Precision's agency relationship with BYD is explicit in the terms of

7   the MDSAs executed between Apple, BYD, and BYD Precision.  For example:

8       (a)    The 2014 MDSA, which BYD Precision signed, states expressly that

9   it amends and restates the 2011 MDSA; and

10      (b)    Section 16.18 of the 2011 MDSA, to which BYD and Apple were

11  signatories, provides that the 2011 MDSA "may not be amended or

12  modified *except by a written amendment signed by authorized*

13  *signatories of both parties*" (emphasis added).

14  Accordingly, by the express terms of the MDSAs, BYD Precision could only enter into the 2014

15  MDSA as an authorized signatory of BYD.

16      31.    Further, Sun Yi-zao, who signed the 2011 MDSA on behalf of BYD, held

17  himself out to be in charge of the Apple relationship for all of BYD.  Mr. Sun serves as a Vice

18  President at BYD while working out of a BYD Precision address.[12]  Mr. Sun also met with Apple

19  representatives in early May 2014 to discuss Apple's request to enter into an updated MDSA.

20  During that meeting, Mr. Sun continued to represent himself as being authorized by the BYD

21  parent company to negotiate for, bind, and otherwise act on behalf of BYD with regard to its

22  contractual relationship with Apple.

23      32.    Lisa Shao, who executed the 2014 MDSA on behalf of BYD Precision, is

24  the General Manager for Business Development at BYD America.[13]  Ms. Shao's role in the

25  negotiation of the 2014 MDSA was primarily that of liaison and translator between Apple

---

[12]  A copy of Mr. Sun's Business Card is attached as Exhibit 8 to Exhibit A.

[13]  A copy of the Shao Business Card is attached as Exhibit 9 to Exhibit A.

personnel and Mr. Sun, who is not fluent in English. In addition, Apple believes that BYD America is the U.S. sales branch of BYD and has no corporate relationship with BYD Precision other than through BYD as a common parent company. Indeed, Ms. Shao's business card identifies her email address as "lisa.shao@**byd.com**" and lists her company's website as "www.byd.cn."[14] Accordingly, Ms. Shao must have acted at the direction of BYD in signing the 2014 MDSA on behalf of BYD Precision.

33. Moreover, in the 2014 MDSA itself, BYD Precision claims to able to bind, speak for, and control its Related Entities, including BYD. By way of example, Section 14.1 of the 2014 MDSA provides that:

> [BYD Precision] represents and warrants on behalf of itself and any Related Entity of [BYD Precision] that (i) Company has the right to enter into the Agreement and [BYD Precision and its Related Entities] have the right to grant the rights and licenses contained herein, and that [BYD Precision's or its affiliates'] performance of this Agreement will not cause [BYD Precision or its affiliates] or any [BYD Precision] Related Entities to breach any other written agreements to which it or a Related Entity of [BYD Precision] is a party[.]

Similarly, by Section 18.3 of the 2014 MDSA, BYD Precision guaranteed the performance of the 2014 MDSA by Related Entities, including BYD.

34. BYD's role as controlling principal in its subsidiaries' contractual relationships with Apple is confirmed by BYD Vice President Sun Yi-zao's contemporaneous negotiation and execution of the 2014 FGA. Although Mr. Sun signed both the 2011 MDSA and the 2014 FGA, he executed the former on behalf of BYD and the latter on behalf of BYD Electronic, where he also serves as Chief Operation Officer and Executive Director.[15] Thus, in a span of just over three years, this same senior BYD employee, who represented himself as overseeing the entire Apple relationship for BYD, negotiated and/or executed agreements between Apple and (i) BYD, where he is primarily employed, (ii) BYD Electronic, where he is an officer and director, and (iii) BYD Precision, where his office is physically located.

---

[14] *Id*.

[15] BYD Electronic Annual Report at 12.

35. BYD is also bound by the Non-Assert provisions of the 2014 MDSA pursuant to principles of equitable estoppel. Under Delaware law, a non-signatory is bound by the terms of that agreement where the non-signatory knowingly accepts the benefit of that agreement. Having consistently embraced the 2014 MDSA when doing so worked to its benefit and involved its employees in negotiating and concluding that agreement, BYD cannot now selectively disavow terms within that agreement.

36. Further, BYD unquestionably has a complete and accurate understanding of its obligations under the 2014 MDSA. Accordingly, BYD cannot disclaim those obligations while simultaneously continuing to enjoy the benefits of the agreement.

**BYD Commenced Patent Litigation in China in Direct Violation of the Non-Assert Agreement in the 2014 MDSA**

37. On April 22, 2015, in direct contravention of the express Non-Assert Agreement in the 2014 MDSA, BYD filed two virtually identical intellectual property suits in the Shenzhen Intermediate People's Court against Apple Beijing, four of Apple's direct and indirect Chinese suppliers, and one of Apple's Chinese distributors.[16] BYD's pursuit of the Chinese Patent Litigation similarly constituted a breach by BYD Precision of its obligations under Section 18.3 of the 2014 MDSA to guarantee performance of the terms and conditions of the agreement by BYD as a Related Entity.

38. The Chinese Patent Litigation relates to two patents that BYD holds in respect of Super-energy Beam Induced Deposition ("SBID") technology. The complaints allege that the SBID technology is used in antennae of the iPhone 6 Plus and certain iPad Mini products[17] that are manufactured by Apple suppliers and sold by Apple Beijing and an Apple distributor. BYD alleges that an Apple supplier—in collaboration with three other Apple suppliers and an Apple distributor—infringed BYD's patents for the SBID technology, and that Apple Beijing and

---

[16] Although the complaints in these suits were filed on April 22, 2015, Apple Beijing was not served with the complaints in these lawsuits until July 14, 2015.

[17] The complaint alleges that the antennae are contained in the "iPad Mini WLAN cell (iPad mini3)." It is unclear whether "iPad Mini WLAN cell (iPad mini3)" intends to refer to the iPad Mini 3 or all iPad products with Wi-Fi capability.

the Apple distributor sold products containing antennae that infringe BYD's patents.  BYD seeks a court order requiring all six defendants to both cease allegedly infringing conduct and destroy allegedly infringing products.

39. The Non-Assert Agreement clearly binds BYD as a "Related Entity" of BYD Precision and prohibits it from bringing the Chinese Patent Litigation.

40. First, the Chinese Patent Litigation is a claim in relation to Intellectual Property Rights as defined by the 2014 MDSA.  Attachment 1 to the 2014 MDSA, "Definitions", defines "Intellectual Property Rights" as:

> [A]ll current and future rights in . . . patents . . . and any other intellectual property rights that may exist anywhere in the world, including, in each case, whether unregistered, registered or comprising an application for registration, and all rights and forms of protection of a similar nature or having equivalent or similar effect to any of the foregoing.

41. Second, BYD is a "Related Entity" of BYD Precision.  As shown above, Attachment 1 to the 2014 MDSA defines Related Entity to mean:

> [A]ny other corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization or other business entity that controls, is controlled by, or is under common control with an entity, where 'control' means that the entity possesses, directly or indirectly, the power to direct or cause the direction of the management policies of the other entity, whether through ownership of voting securities, an interest in registered capital, by contract, or otherwise.

42. As the controlling shareholder of BYD Precision,[18] BYD falls squarely within this definition.  Accordingly, by bringing and progressing the Chinese Patent Litigation, both BYD and BYD Precision—as guarantor of BYD's performance of the terms and conditions of the 2014 MDSA—have breached and continue to be in breach of the 2014 MDSA.

**Apple Commences Arbitration Under the 2014 MDSA**

43. In order to preserve its rights under the 2014 MDSA, and in direct response to the breach of the Non-Assert Agreement via BYD's pursuit of the Chinese Patent Litigation,

---

[18]  BYD Annual Report, at 88–89.

Apple commenced an arbitration under the ICC Rules of Arbitration in San Francisco by Request for Arbitration dated October 23, 2015.

44.  In the Request for Arbitration, Apple seeks injunctive, declaratory, and monetary relief against BYD and BYD Precision, including:

(a)  an order permanently enjoining BYD from pursuing the Chinese Patent Litigation;

(b)  a declaration that (i) the Non-Assert Agreement in the 2014 MDSA is binding and enforceable, (ii) BYD as a "Related Entity" is bound by the Non-Assert Agreement and has breached that agreement by bringing the Chinese Patent Litigation, (iii) BYD Precision has breached its obligation under Section 18.3 of the 2014 MDSA to guarantee BYD's compliance with the Non-Assert Agreement, and (iv) Apple and the parties against whom the Chinese Patent Litigation have been brought—Apple Beijing and Apple's four suppliers and distributor—have no liability in relation to BYD's patent infringement claims in the Chinese Patent Litigation, by virtue of the Non-Assert Agreement; and

(c)  damages resulting from Respondents' breach in an amount to be determined in the arbitration, including, but not limited to all damages resulting from lost sales, as well as legal fees incurred by Apple and its affiliates in the Chinese Patent Litigation and pre- and post-award interest.

## NATURE AND PURPOSE OF RELIEF REQUESTED

45.  Apple respectfully requests that this Court issue an order compelling BYD, as a Related Entity bound by the Non-Assert Agreement in the 2014 MDSA, and BYD Precision, as the guarantor of BYD's performance of its obligation under the Non-Assert Agreement, to arbitrate their dispute in accordance with the Arbitration Agreement in the 2014 MDSA.

46. This relief is essential because Respondent BYD—by commencing litigation in the Shenzhen Intermediate People's Court concerning matters arising out of and related to the 2014 MDSA—has already disregarded the Arbitration Agreement.  The pursuit of that litigation in Chinese court is in direct violation of the requirement under the 2014 MDSA that all disputes arising out of or relating to that agreement be resolved through ICC arbitration in San Francisco.  There is no reason to believe that BYD, having already flouted its Non-Assert Agreement obligation, will discontinue the Chinese Patent Litigation in favor of the ICC arbitration commenced by Apple, as is required under the 2014 MDSA.  Accordingly, an order to compel arbitration under the 2014 MDSA is essential to enforce the parties' agreement to arbitrate thereunder.

47. Apple further respectfully requests that this Court grant preliminary injunctive relief in aid of the ICC arbitration to prevent Respondents from prosecuting the Chinese Patent Litigation, pending a final determination of the parties' dispute in that arbitration.  As the Arbitration Agreement in the 2014 MDSA confirms, Apple will be—and indeed has been—irreparably harmed by Respondents' failure to meet their obligations thereunder.

48. BYD's breach of the Non-Assert Agreement, and BYD Precision's breach of its guarantor obligations thereunder, will irreparably damage Apple's goodwill, reputation, and business in China by threatening to cause serious disruption to Apple's supply chain and, consequently, Apple's ability to provide products to consumers and businesses.  It is self-evident that it is critical to Apple's continued success for it to preserve its business reputation and to maintain strong and seamless relationships with its consumers and business partners.

49. In the absence of the requested injunctive relief, the very harm that Apple seeks to redress by way of arbitration, namely, the disruption of its supply chain and other unquantifiable harm to Apple, will likely occur before a final determination is reached in the ICC arbitration.  Accordingly, the parties' arbitration will be effectively rendered moot unless the *status quo* is preserved.

**PETITION TO COMPEL ARBITRATION AND PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that the Court:

A. Assume jurisdiction of this matter pursuant to Title 9, United States Code;

B. Enter an order in accordance with 9 U.S.C. §§ 4 and 206 compelling Respondents BYD and BYD Precision to arbitrate the parties' dispute regarding the Non-Assert Agreement under the Arbitration Agreement;

C. Enter a preliminary injunction pending a final determination being reached in the ICC arbitration restraining and enjoining Respondent BYD from pursuing the Chinese Patent Litigation;

D. Retain jurisdiction over this action for purposes of confirming any arbitral award, pursuant to 9 U.S.C. §§ 9 and 207; and

E. Grant any such other relief as the Court shall deem just and appropriate.

Dated: October 29, 2015

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By: /s/ Harrison J. Frahn IV
Harrison J. Frahn IV
hfrahn@stblaw.com
Jason M. Bussey
jbussey@stblaw.com
2475 Hanover Street
Palo Alto, California 94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

SIMPSON THACHER & BARTLETT LLP
Peter C. Thomas (*pro hac vice* application forthcoming)
pthomas@stblaw.com
Janet M. Whittaker (*pro hac vice* application forthcoming)
janet.whittaker@stblaw.com
900 G Street, N.W.
Washington, D.C. 20001
Telephone: (202) 636-5500
Facsimile: (202) 636-5502

*Attorneys for Petitioner Apple Inc.*