ALLEN RUBY (SBN 47109)
Allen.Ruby@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone:   (650) 470-4500
Facsimile:   (650) 470-4570

LANCE A. ETCHEVERRY (SBN 199916)
Lance.Etcheverry@skadden.com
ABRAHAM A. TABAIE (SBN 260727)
Abraham.Tabaie@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Respondents
BYD PRECISION MANUFACTURING CO., LTD.
and BYD COMPANY LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., | CASE NO.: 3:15-CV-04985-RS |
| Petitioner, | **BYD COMPANY LIMITED'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| v. | |
| BYD PRECISION MANUFACTURING CO., LTD. and BYD COMPANY LIMITED, | Hearing Date: January 14, 2016<br>Time:           1:30 p.m.<br>Courtroom:  3 |
| Respondents. | Judge:          Hon. Richard Seeborg |

REDACTED VERSION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .................................................................................................................2

    I.      FACTUAL BACKGROUND ...................................................................................3

          A.      Apple's Allegations ........................................................................................3

          B.      Limited's Lack Of Meaningful Contacts With California Or The Issues In The Petition ....................................................................................4

ARGUMENT .........................................................................................................................5

    I.      APPLE HAS FAILED TO SATISFY ITS BURDEN OF ESTABLISHING PERSONAL JURISDICTION OVER LIMITED. ...................................................5

          A.      Limited Is Not Subject To General Jurisdiction In California. .....................6

          B.      Limited Is Not Subject To Specific Jurisdiction In California. ..................11

CONCLUSION ....................................................................................................................14

## TABLE OF AUTHORITIES

**CASES**                                                                                                 **PAGE(S)**

*AM Trust v. UBS AG*,
    78 F. Supp. 3d 977 (N.D. Cal. 2015), *appeal docketed*,
    No. 15-15343 (9th Cir. Feb. 25, 2015) ............................................................................... 11

*Amba Marketing Systems, Inc. v. Jobar International, Inc.*,
    551 F.2d 784 (9th Cir. 1977) ............................................................................................ 5

*Butcher's Union Local No. 498, United Food Workers & Commercial Workers v. SDC Investment, Inc.*,
    788 F.2d 535 (9th Cir. 1986) .......................................................................................... 12

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ........................................................................................ 2, 6, 10, 11

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ........................................................................................ 5, 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011) ..................................................................................................... 6

*Gutierrez v. Givens*,
    989 F. Supp. 1033 (S.D. Cal. 1997) ............................................................................... 12

*Harris Rutsky & Co. Insurance Services v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ........................................................................................ 8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ...................................................................................................... 12

*Holland America Line Inc. v. Wartsila North America, Inc.*,
    485 F.3d 450 (9th Cir. 2007) ............................................................................. 12, 13, 14

*International Insurance Co. v. Certain Underwriters at Lloyd's London*,
    No. 88 C 9838,
    1992 U.S. Dist. LEXIS 6126 (N.D. Ill. Apr. 30, 1992) ................................................. 13

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ................................................................................................. 6, 10

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
    628 F.2d 1175 (9th Cir. 1980) ........................................................................................ 9

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014), *cert. denied*,
    135 S. Ct. 2310 (2015) ....................................................................................... 6, 10, 11

*Perkins v. Benguet Consolidated Mining Co.*,
    342 U.S. 437 (1952) ........................................................................................................ 6

*Pinnacle Fitness & Recreation Management LLC v. Jerry & Vicky Moyes Family Trust*,
    No. 08-CV-1368 H(BS),
    2010 WL 5141686 (S.D. Cal. Dec. 13, 2010) .......................................................................... 13

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ............................................................................. 6, 7, 8, 9, 12

*Ryan v. Microsoft Corp.*,
    Case No. 14–CV–04634–LHK,
    2015 WL 1738352 (N.D. Cal. Apr. 10, 2015) ...................................................................... 12

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ..................................................................................... 5, 6, 12

*Setra of North America, Inc. v. Motorcoach Financial, Inc.*,
    367 F. Supp. 2d 853 (M.D.N.C. 2005) .................................................................................. 9

*Terracom v. Valley National Bank*,
    49 F.3d 555 (9th Cir. 1995) ................................................................................................. 14

**STATUTES**

Cal. Civ. Proc. Code § 410.10 ......................................................................................................... 6

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 14, 2016, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Richard Seeborg, United States District Judge, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 3, the undersigned Respondent BYD Company Limited ("Limited") will and hereby does move the Court to dismiss the Petition For Order Compelling Arbitration and For Injunctive Relief Pending Arbitration ("Petition") of Petitioner Apple Inc. ("Apple") as against Limited.

Limited's Motion to Dismiss For Lack of Personal Jurisdiction ("Motion to Dismiss") is made pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure in that Limited is not amenable to personal jurisdiction in California.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Li Qian in support thereof ("Qian MTD Decl."), the files and pleadings in this action, the arguments of counsel, and any such other matters as the Court may consider.

## INTRODUCTION

Relying almost exclusively on an arbitration clause in an agreement that Limited did not sign and was not a party to, Apple seeks to hale Limited, a Chinese company with no meaningful contacts with California, into this Court and compel it to both arbitrate with Apple and refrain from litigating a patent case in China that has already been discontinued.  Setting aside the Petition's numerous other deficiencies, Apple fails to allege any valid grounds for the Court to exercise general jurisdiction over Limited.  Limited is not registered to conduct business in California, does not have any employees in California, does not maintain corporate bank accounts, offices, or manufacturing facilities in California, and does not own any real or personal property or other assets in California.  (Qian MTD Decl. ¶ 3.)  Nor can Apple point to any basis for the exercise of specific jurisdiction, as Limited was not a party to the 2014 Master Development and Supply Agreement ("2014 MDSA") on which Apple bases its claims.  The Court should thus dismiss the Petition because Apple has failed to satisfy its burden of establishing personal jurisdiction over Limited.

Apple's claim that the Court has general jurisdiction over Limited is foreclosed by established Supreme Court precedent.  To establish general jurisdiction, a plaintiff must show that a defendant's activities within the state are so continuous and systematic that the defendant is "essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (citation omitted).  As established in the accompanying declarations, Limited has not directly availed itself of this forum and lacks any meaningful contacts with California, as Limited's contact with California is through its two America-based subsidiaries.  (Qian MTD Decl. ¶ 4.)  But, as a matter of law, Apple cannot impute the America-based subsidiaries' contacts with California to Limited, absent a finding that those subsidiaries act as Limited's "alter egos."  Recognizing the futility of that argument, Apple has not even attempted to make an alter ego showing.  As Limited's contacts with California are in no sense comparable to those of a domestic corporation, the Court cannot exercise general jurisdiction over Limited.

Apple's attempt to invoke specific jurisdiction over Limited similarly falls flat. Apple's specific jurisdiction argument hinges entirely on its misplaced assertion that Limited is a party to

2

the 2014 MDSA between Apple and BYD Precision Manufacturing Co., Ltd. ("Precision"), a partially and indirectly owned Limited subsidiary, many steps removed from Limited in the corporate structure.  But Apple offers no evidence showing that Limited ever agreed to the 2014 MDSA, or that Limited authorized Precision to enter the 2014 MDSA on Limited's behalf.  Absent such evidence, and in the face of evidence demonstrating that Apple knew that it was contracting with Precision, and Precision alone, the Court cannot exercise specific jurisdiction over Limited.

## I.   FACTUAL BACKGROUND[1]

### A.   Apple's Allegations

Apple argues that Limited breached the 2014 MDSA entered into between Apple and Precision by bringing patent infringement claims against several of Apple's Chinese subsidiaries and suppliers in the Shenzhen Intermediate People's Court in Shenzhen, China ("Chinese Patent Litigation").  (*See* Petition ¶¶ 1-3.)  Even though the 2014 MDSA was only between Apple and Precision, Apple's Petition names both Limited and Precision as Respondents, and requests (1) an order compelling Limited to arbitrate, and (2) an anti-suit injunction preventing Limited from continuing to prosecute the Chinese Patent Litigation, which has now been discontinued.  (Petition ¶¶ 45-49; Declaration of Lance A. Etcheverry In Support of Respondents' Opposition to Apple Inc.'s Motion to Compel Arbitration and for Preliminary Injunction, Ex. C.)

Apple alleges that this Court has both general and specific personal jurisdiction over Limited.  (Petition ¶¶ 13, 15-17.)  Specifically, Apple alleges that:

> Upon information and belief, BYD and its subsidiaries also maintain a significant presence in the United States, including corporate offices in both Los Angeles and the greater Chicago area, and an electric bus factory in Lancaster, California.
>
> . . .
>
> This Court has specific personal jurisdiction over Respondents by virtue of the arbitration agreement in the 2014 MDSA, which provides that arbitration shall take place in San Francisco, California. Additionally, the arbitration agreement expressly acknowledges

---

[1]   Because the background facts of this action are set out more fully in Respondents' Opposition to Apple Inc.'s Motion to Compel Arbitration and for a Preliminary Injunction ("Opposition to Motion to Compel") filed concurrently with this Motion, this Motion will only set out such facts as are relevant to the personal jurisdiction analysis.

>Apple's right to resort to this Court—as a court of competent jurisdiction—for the relief sought in this Petition.
>
>This Court also has general personal jurisdiction over Respondents on the basis of Respondents' systematic and continuous contacts in California. BYD maintains its North America headquarters in Los Angeles, California. BYD, directly and/or through its subsidiaries, designs and manufactures vehicles in its California facilities, and in recent years, has publicly announced the expansion of its California presence through the execution of contracts with California-based purchasers and through the hiring of additional employees in California.

(*Id.* ¶¶ 13, 16-17 (defining Respondents as both Limited and Precision) (footnotes omitted).)

### B. Limited's Lack Of Meaningful Contacts With California Or The Issues In The Petition

Limited is a corporation organized and operating under the laws of China, with its principal place of business in Shenzhen, China. (Petition ¶ 10.) Limited has no meaningful contacts with the State of California. Limited is not registered to conduct business in California, does not have any employees in California, does not maintain corporate bank accounts, offices, or manufacturing facilities in California, and does not own any real or personal property or assets in California. (*See* Qian MTD Decl. ¶ 3.)

Instead, Limited's indirect contacts with California are through two subsidiaries, BYD America Corporation ("America") and BYD Motors, Inc. ("Motors") (*Id.* ¶ 4.) America maintains an office in Los Angeles, California, and Motors operates an automobile manufacturing plant in Lancaster, California. (*Id.* ¶¶ 5-6.) These two subsidiaries are independently functioning companies that observe all relevant corporate formalities in separating their operations from those of their parent company, Limited. (*Id.* ¶ 7.) Among other things:

- America and Motors are adequately capitalized to maintain their holdings. (*Id.* ¶ 8.)
- Their books and records are separate from Limited's. (*Id.* ¶ 9.)
- Each entity owns or leases its own facilities, enters contracts on its own, and pays its own taxes. (*Id.* ¶ 10.)
- Each has a separate board of directors from Limited. (*Id.* ¶ 11.)
- Both entities have their own human resources divisions that handle their own day-to-day employment issues, including hiring and firing decisions, and they each make their own

routine purchasing decisions.  (*Id.* ¶ 12.)

- Although Limited provides loans to America and Motors, those loans are all interest-bearing and Limited maintains corporate formalities by properly documenting its loans and capital contributions to America and Motors.  (*Id.* ¶ 13.)

With respect to Apple's attempt to invoke specific jurisdiction, Limited is neither a party nor a signatory to the 2014 MDSA. (*See* Dkt. 3-02, Declaration of Jason Bussey Ex. B, at 14 (hereinafter referred to as the "2014 MDSA").)  Moreover, Precision never intended to enter into the 2014 MDSA on Limited's behalf.  (*See* Declaration of Sun Yi-zao In Support of Respondents' Opposition to Apple Inc.'s Motion to Compel Arbitration and for Preliminary Injunction ("Yi-zao Decl.") ¶ 3; Declaration of Linna Shang In Support of Respondents' Opposition to Apple Inc.'s Motion to Compel Arbitration and for Preliminary Injunction ("Shang Decl.") ¶ 3.)  Nor did Precision's representatives make any representations to Apple that they were negotiating the 2014 MDSA on Limited's behalf or that they had the authority to act on behalf of Limited.  (Shang Decl. ¶ 4; Yi-zao Decl. ¶ 4.) ███████████████████████████

███████████████████████████ (*See* Shang Decl. ¶¶ 4-5, Ex. A.)

## ARGUMENT

### I.  APPLE HAS FAILED TO SATISFY ITS BURDEN OF ESTABLISHING PERSONAL JURISDICTION OVER LIMITED.

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  To meet this burden of proof, "the plaintiff cannot 'simply rest on the bare allegations of its complaint,'" *id.* (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)), but rather must put forward affirmative evidence in its pleadings and affidavits demonstrating a prima facie showing that personal jurisdiction is proper. *Id.*  To make out a prima facie showing, the plaintiff must "demonstrate facts that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citation omitted).

Since "California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the Constitution of [California] or of the United States,'" *Daimler*, 134 S. Ct. at 753 (quoting Cal. Civ. Proc. Code § 410.10), federal courts sitting in California may only exercise personal jurisdiction if doing so "comports with the limits imposed by federal due process." *Id*. The exercise of jurisdiction over a nonresident defendant comports with constitutional requirements if the defendant has "'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). As demonstrated below, Apple cannot satisfy its burden of proving sufficient contacts between Limited and the state of California to establish personal jurisdiction.

### A. Limited Is Not Subject To General Jurisdiction In California.

#### 1. Apple Cannot Satisfy The Stringent Test For General Jurisdiction.

The test for general jurisdiction requires that the foreign corporation's "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 751 (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). "Only in an '***exceptional*** case' will general jurisdiction be available" outside of a corporation's "place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (emphasis added) (quoting *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2310 (2015)).

The Supreme Court has previously held that to establish general jurisdiction over a nonresident defendant, the plaintiff must demonstrate that the defendant's contacts in the forum state are "substantial," "continuous and systematic." *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-48 (1952). The Supreme Court recently clarified, however, that "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 761 (alteration in original) (citation omitted).

6

Apple's only allegation with respect to general jurisdiction is that:

> BYD maintains its North America headquarters in Los Angeles, California. BYD, directly *and/or* through its subsidiaries, designs and manufactures vehicles in its California facilities, and in recent years, has publicly announced the expansion of its California presence through the execution of contracts with California-based purchasers and through the hiring of additional employees in California.

(Petition ¶ 17 (emphasis added).)

Limited's sporadic contacts with California are almost exclusively through its subsidiaries, America and Motors (*see supra* 4-5). Federal law, however, precludes Apple from imputing America's and Motors' contacts with California to Limited unless Apple can show that America and Motors are Limited's alter egos. *See Ranza*, 793 F.3d at 1071. Because America and Motors maintain separate corporate identities from Limited, Apple cannot make such a showing. As such, Apple does not even allege an alter ego theory in the Petition – which is a prerequisite for asserting that theory. (*See* Petition ¶¶ 13, 15-17.) Moreover, even if America's and Motors' contacts could be imputed to Limited, the Court still could not maintain general jurisdiction over Limited because those contacts are insufficient as a matter of law to establish general jurisdiction.

### 2. Apple Cannot Impute America's And Motors' Contacts With California To Limited.

"The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza*, 793 F.3d at 1070. The only "limited circumstance[]" where such imputation is allowed is when the subsidiary and parent are "alter egos" of one another. *See id.* at 1071.[2]

---

[2] "Before the Supreme Court's *Daimler* decision, [the Ninth Circuit] permitted a plaintiff to pierce the corporate veil for jurisdictional purposes and attribute a local entity's contacts to its out-of-state affiliate under one of two separate tests: the 'agency' test and the 'alter ego' test. The agency test required a plaintiff to show the subsidiary 'perform[ed] services that [were] sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.' The Supreme Court invalidated this test." *Ranza*, 793 F.3d at 1071 (second and third alteration in original) (citation omitted).

7

"To satisfy the alter ego test, a plaintiff 'must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Ranza*, 793 F.3d at 1073 (alterations in original) (quoting *Unocal*, 248 F.3d at 925-26). "The 'unity of interest and ownership' prong of this test requires 'a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.'" *Id.* (citation omitted). "This test envisions pervasive control over the subsidiary, such as when a parent corporation 'dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day operation.'" *Id.* (citation omitted). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id.*; *see also Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

In *Unocal*, the Ninth Circuit held that the plaintiffs did not establish the "unity of interest and ownership" between a parent and its subsidiary necessary to form an alter ego relationship, where the evidence showed only "an active parent corporation involved directly in decision-making about its subsidiaries' holdings," but each entity "observe[s] all of the corporate formalities necessary to maintain corporate separateness." 248 F.3d at 928. The evidence in *Unocal* included the parent's:

> "(1) involvement in its subsidiaries' acquisitions, divestments and capital expenditures; (2) formulation of general business policies and strategies applicable to its subsidiaries, including specialization in particular areas of commerce; (3) provision of loans and other types of financing to subsidiaries; [and] (4) maintenance of overlapping directors and officers with its subsidiaries . . . ."
>
> This level of involvement was insufficient to negate the entities' separate personalities through the observance of corporate formalities, such as adequate capitalization at each entity and the proper documentation of transactions between the entities.

*Ranza*, 793 F.3d at 1073-74 (alteration in original) (citation omitted); *see also id.* (similarly finding no alter ego relationship where parent was, *inter alia*, heavily involved in subsidiary's business, exercised control over overall budget, had approval authority over purchases, and was involved in hiring decisions because the subsidiary maintained its own facilities and leases, kept separate books

8

and records, and entered into its own contracts); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (holding there was no alter ego relationship where some directors for one entity sat on the board of the other).

Apple has not even alleged an alter-ego relationship between Limited and its American subsidiaries, nor could it. (*See* Petition ¶¶ 13, 16-17.) Limited does not dominate the day-to-day affairs of either America or Motors, and does not exert regular control over their business operations. For example, America and Motors are adequately capitalized to maintain their holdings. (Qian MTD Decl. ¶ 8.) Moreover, their books and records are kept separate from Limited's. (*Id.* ¶ 9.) Further, each entity owns or leases its own facilities, enters contracts on its own, and pays its own taxes. (*Id.* ¶ 10.) Each has separate boards of directors. (*Id.* ¶ 11.) America and Motors each have their own human resources divisions that handle their own day-to-day employment issues, including hiring and firing decisions, and they each make their own routine purchasing decisions. (*Id.* ¶ 12.) Although Limited provides loans to America and Motors, those loans are all interest-bearing and Limited maintains corporate formalities by properly documenting its loans and capital contributions to America and Motors. (*Id.* ¶ 13.)

In sum, Limited respects the separate corporate identities of America and Motors, and the three entities enjoy nothing more than an ordinary parent-subsidiary relationship. Apple has not shown, and cannot show, facts to make a prima facie case that Limited has "pervasive control" over America and Motors, such that Limited "dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day operation." *Ranza*, 793 F.3d at 1073 (citation omitted); *see also Setra of N. Am., Inc. v. Motorcoach Fin., Inc.*, 367 F. Supp. 2d 853, 859 (M.D.N.C. 2005) (holding that a subsidiary's contacts with North Carolina could not be imputed to its European parent companies even though the subsidiary's principal place of business was North Carolina, because the companies maintained separate business records and tax returns, the parent did not dominate the subsidiary's day-to-day activities, and the subsidiary conducted business entirely unrelated to its parent's). Because there cannot, as a matter of law, be an alter ego finding with respect to America and Motors, this Court cannot assert general jurisdiction over Limited.

3. <u>Even If America's And Motors' Contacts Were Imputed To Limited, The Court Would Still Not Have General Jurisdiction Over Limited.</u>

Ultimately, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction'" since "[t]hose affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable." *Daimler*, 134 S. Ct. at 760 (first and second alterations in original) (citation omitted). Only in an "exceptional case" will general jurisdiction be available anywhere else. *Id*. at 761 n.19. In fact, for general jurisdiction to be proper, the defendant corporation must be "comparable to a domestic enterprise in that State." *Id.* at 758 n.11.

"The Supreme Court's recent decision in *Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation." *Martinez*, 764 F.3d at 1070, 135 S. Ct. 2310 (2015). In *Daimler*, the Court determined that a German car manufacturer did not have sufficient contacts in California to render it subject to general jurisdiction. 134 S. Ct. at 760. The Court assumed, for the sake of argument, that the California contacts of Daimler's subsidiary, MBUSA, could be imputed to Daimler. *Id*. ("Even if we were to assume that MBUSA is at home in California, and further to assume MBUSA's contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there."). The Court described these contacts as follows:

> Although MBUSA's principal place of business is in New Jersey, MBUSA has multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irvine. According to the record developed below, MBUSA is the largest supplier of luxury vehicles to the California market. In particular, over 10% of all sales of new vehicles in the United States take place in California, and MBUSA's California sales account for 2.4% of Daimler's worldwide sales.

*Id*. at 752. Notwithstanding the fact that MBUSA's contacts were presumed imputable to Daimler, the Court held that "subjecting Daimler to the general jurisdiction of courts in California would not accord with the 'fair play and substantial justice' due process demands." *Id*. at 763 (quoting *Int'l Shoe*, 326 U.S. at 316). The Court refused to "approve the exercise of general jurisdiction in every

State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" *Id.* at 761 (citation omitted). According to the Court, "[t]hat formulation . . . is unacceptably grasping." *Id*.

After *Daimler,* the Ninth Circuit similarly rejected an attempt to assert general jurisdiction against a foreign corporation in California. In *Martinez*, the plaintiffs alleged general jurisdiction against ATR, a French company, based on several hundred million dollars of contracts to sell aircraft and components in California, sending company representatives to California for business purposes, an unaffiliated entity's use of ATR's aircraft for flights in California, and advertisements in publications distributed in California. 764 F.3d at 1070. As in *Daimler*, the Ninth Circuit found these contacts were "plainly insufficient to subject ATR to general jurisdiction in California." *Id.*

Here, Limited is a corporation organized and operating under the laws of China, with its principal place of business in Shenzhen, China. This alone should end the enquiry. *See AM Trust v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015) ("[T]he *Daimler* Court rejected the argument that general jurisdiction is appropriate whenever a corporation engages in a substantial, continuous, and systemic course of conduct – and clearly found that the only relevant facts for determining whether a corporation is 'at home' are its place of incorporation and its principal place of business."), *appeal docketed*, No. 15-15343 (9th Cir. Feb. 25, 2015).

Limited's principal contacts with California are through America and Motors, which, Apple alleges, have an office and single manufacturing plant in California. (Qian MTD Decl. ¶ 4; Petition ¶ 17.) Even assuming that America's and Motors' contacts with California could be imputed to Limited, this is a far cry from the "exceptional case" that would justify a finding of general jurisdiction in California, as opposed to China – the place of incorporation and principal place of business. On these facts, Limited's contacts cannot be said to "render [Limited] essentially at home in [California]." *See Daimler*, 134 S. Ct. at 761 (citation omitted). Thus, this Court cannot exercise general jurisdiction over Limited.

### B. Limited Is Not Subject To Specific Jurisdiction In California.

Courts determine whether to exercise specific jurisdiction by evaluating the quality and nature of the defendant's activities in the forum state in relation to the particular cause of action.

11

*See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & nn.8-9 (1984); *Ranza*, 793 F.3d at 1068-69.  For specific jurisdiction to be proper:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted).

When deciding personal jurisdiction, the Court need only consider the bases for jurisdiction asserted by Apple.  *See Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539-40 (9th Cir. 1986); *Gutierrez v. Givens*, 989 F. Supp. 1033, 1038 (S.D. Cal. 1997).  Apple's **sole** allegation with respect to specific jurisdiction is that this Court may exercise jurisdiction over Limited "by virtue of the arbitration agreement in the 2014 MDSA, which provides that arbitration shall take place in San Francisco, California." (Petition ¶ 16.)  Accordingly, the Court may only exercise specific jurisdiction over Limited if it is subject to arbitration in California pursuant to the 2014 MDSA.  Because Limited is not a party to the 2014 MDSA, this Court does not have personal jurisdiction over it.

The Ninth Circuit has held that "[u]nder general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction" only if "the defendant agrees to be so bound." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007).[3]  Accordingly, if the defendant is not a signatory to the forum selection clause – or, in this case, the arbitration clause – the clause cannot invest the Court with personal jurisdiction over the defendant unless the defendant can be bound by the clause under ordinary contract principles, such as agency.  *See id.* (no personal jurisdiction where the defendants did not sign the forum selection

---

[3] Because "an agreement to arbitrate is actually a specialized forum selection clause, . . . the analysis of one is therefore applicable to the analysis of the other." *Ryan v. Microsoft Corp.*, 2015 WL 1738352, at *6 n.3 (N.D. Cal. Apr. 10, 2015) (citation omitted).

clause, the plaintiff put forward no evidence that the defendants agreed to be bound by the clause, and where the defendants could not be bound under agency principles); *Int'l Ins. Co. v. Certain Underwriters at Lloyd's London*, 1992 U.S. Dist. LEXIS 6126, at *3-5 (N.D. Ill. Apr. 30, 1992) (declining to exercise specific jurisdiction over nonsignatory subsidiary based on jurisdiction consent clause in parent's contract where the subsidiary was hardly mentioned in the contract, there was no other evidence that the subsidiary agreed to be bound by the contract, and the subsidiary was not the parent's alter ego); *Pinnacle Fitness & Recreation Mgmt. LLC v. Jerry & Vicky Moyes Family Trust*, 2010 WL 5141686, at *2-4 (S.D. Cal. Dec. 13, 2010) (no personal jurisdiction where the defendant did not sign the forum selection clause in her personal capacity and where she could not be bound under agency principles).

For instance, in *Holland*, the plaintiff argued that a European parent company and its European subsidiary could be bound by a forum selection clause signed by the parent's North American subsidiary. *See* 485 F.3d at 458. The plaintiff put forward no evidence that the European entities had either signed or otherwise agreed to the forum selection clause, and so the court analyzed whether the European entities could be bound to the North American subsidiary's forum selection clause via agency principles. *Id.* The Ninth Circuit held that the European entities could not be bound to the forum selection clause because: (1) the North American subsidiary denied that it was acting as an agent for the European entities; (2) there was "no evidence that [the North American subsidiary] had the authority to consent to jurisdiction for [the European entities]"; (3) the parent "was not a party to [the] agreement"; and (4) the parent "categorically . . . denied allowing [the North American subsidiary] to serve as its agent for the purpose of consenting to litigation" in the United States. *Id.* The court noted that "[i]n the face of such unequivocal denials" that the European entities had agreed to the forum selection clause, the plaintiff could not establish personal jurisdiction with mere conclusory allegations. *Id.*

The Ninth Circuit's rationale in *Holland* controls here. Limited did not sign the 2014 MDSA, is not a party to it, and is thus not subject to its arbitration clause. (*See generally* Opposition to Motion to Compel; 2014 MDSA at 14.) Precision denies that it was acting on Limited's behalf when it signed the agreement. (Yi-zao Decl. ¶ 3; Shang Decl. ¶ 3.) Further,

1  Respondents have put forth affirmative evidence showing that ███████████
2  ████████████████████████████████████████████████████████████████
3  ████████████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████
8  ██████████████████████████████████████

9       In the face of these unequivocal denials and documentary evidence, Apple offers *no*
10 *evidence whatsoever* either that Limited explicitly agreed to the 2014 MDSA's arbitration clause,
11 or that Precision intended to enter into that agreement on Limited's behalf.  As such, Apple's
12 attenuated and unsupported allegations are legally insufficient to establish specific jurisdiction.
13 *See Holland*, 485 F.3d at 458; *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)
14 (affirming district court's denial of jurisdictional discovery where "a plaintiff's claim of personal
15 jurisdiction appears to be both attenuated and based on bare allegations in the face of specific
16 denials made by defendants") (citation omitted).

## CONCLUSION

18    Apple has not established and cannot establish that Limited is subject to personal
19 jurisdiction in California.  Therefore, Limited respectfully requests that its motion to dismiss for
20 lack of personal jurisdiction be granted.

21 DATED: December 8, 2015

22                                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

24                                         By:  _____/s/ Lance A. Etcheverry_____
25                                              LANCE A. ETCHEVERRY
                                                Attorneys for Respondents
26                                              BYD PRECISION MANUFACTURING CO.,
                                                LTD. and BYD COMPANY LIMITED

14

BYD COMPANY LIMITED'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION   CASE NO. 3:15-cv-04985-RS
770528-LACSR02A - MSW