UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>BYD COMPANY LIMITED, et al.,<br><br>　　　　　Respondents. | Case No. 15-cv-04985-RS<br><br>**ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO COMPEL ARBITRATION** |

**I. INTRODUCTION**

In 2011, petitioner Apple Inc. ("Apple") engaged respondent BYD Company Limited ("Limited") to develop, supply, and support certain components of its consumer electronic products in China. The terms of the relationship were memorialized in a Master Development and Supply Agreement ("MDSA"), and after a spell of three years, Apple instigated discussions to update the parties' arrangement. The 2014 MDSA emerged from those negotiations, yet it was inked this time between Apple and a Limited subsidiary—respondent BYD Precision Manufacturing Company, Ltd. ("Precision"). The parent corporation (Limited) later brought patent infringement claims against various Apple entities in China, a move Apple construes as a violation of the terms of the 2014 MDSA. Apple now seeks to compel arbitration of its dispute with Limited, who responds that it is not amenable to personal jurisdiction in this forum. Limited also denies it is bound by the 2014 MDSA because it never signed that agreement nor manifested an intent to be bound by its terms.

For the reasons that follow, respondents' motion to dismiss for lack of personal jurisdiction is denied. Limited is bound to the 2014 MDSA under ordinary agency principles. Additionally, a valid arbitration agreement encompasses the dispute regarding Limited's alleged breach of the

"non-assert" provision. Apple's motion to compel arbitration accordingly will be granted.

## II. FACTUAL BACKGROUND

Petitioner Apple Inc. is a leading personal technology provider. Respondents Limited and Precision design and produce sustainable energy technology. Limited is the parent and controlling shareholder of Precision. Both companies are incorporated in China and maintain their principal place of business in Shenzhen, China.

In 2011, Apple engaged Limited to develop, supply, and support certain components of its consumer electronic products in China. The terms and conditions governing the relationship were set forth in the 2011 MDSA. Three uneventful (and presumably successful) years passed. Apple then instigated discussions to update the terms governing the parties' relationship.

The 2014 MDSA emerged from those negotiations, and it diverged from the parties' previous contract in a number of significant ways. Chief among them, Precision took Limited's place as signatory to the agreement. Section 13.2(e) also prohibited Precision, its "Related Entities,"[1] and their successors and assigns from asserting intellectual property claims against Apple, its suppliers, and its distributors.[2] Finally, the agreement included a "Dispute Resolution, Jurisdiction, and Venue" provision providing "[a]ll disputes arising out of or related to the [2014] MDSA shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce ["ICC"]."

---

[1] "Related Entity," is defined in the agreement to mean "any other corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization or other business entity that controls, is controlled by, or is under common control with an entity, where "control" means that the entity possesses, directly or indirectly, the power to direct or cause the direction of the management policies of the other entity, whether through ownership of voting securities, an interest in registered capital, by contract, or otherwise."

[2] The "non-assert" provision specifically provides that Precision, "on behalf of itself, its Related Entities, and their successors in interest and permitted assigns, who shall be bound as [Precision], hereby covenants not to assert: (i) any claims for infringement of any Intellectual Property Rights against Apple or its Related Entities for any products or services; and (ii) any claims for infringement of any Intellectual Property Rights against Apple's direct or indirect customers, partners, consultants, independent contractors, resellers, distributors, or suppliers, but only for products (including components) or services made, used, sold, imported, exported, distributed or otherwise provided or disposed of by or for Apple or Apple Related Entities."

In late 2014, Limited contends it discovered Apple entities were infringing its patents, and roughly four months later, on April 22, 2015, launched a pair of proceedings in China ("Chinese Patent Litigation"). Specifically, Limited filed two patent infringement lawsuits in the Shenzhen Intermediate People's Court against Apple Beijing, an Apple distributor, and four Apple suppliers, whom taken together, form an essential link in Apple's Chinese supply chain.[3]

Apple commenced an arbitration against Limited and Precision in San Francisco in October 2015, presumably to squelch the Chinese Patent Litigation ongoing half a globe away. Apple insists that Limited, though not a signatory to the 2014 MDSA, nevertheless is bound by the "non-assert" and arbitration provisions because it is Precision's parent and controlling shareholder, and thus a "Related Entity" under the agreement. Apple further maintains agency and estoppel principles bind Limited to the contract, and that Precision has breached its obligation to guarantee Limited's performance under the agreement.

Apple initially sought an order (1) compelling both Limited and Precision to arbitrate their dispute, and (2) issuing an anti-suit injunction barring Limited from proceeding with the Chinese Patent Litigation. On November 11, 2015, however, Limited discontinued the Chinese proceedings in an effort to facilitate settlement communications between Apple and Precision. Precision, moreover, never has denied it is bound by the 2014 MDSA, and represents it will submit to arbitration of Apple's claims against it before the ICC. Accordingly, the relief Apple continues to seek in this litigation is only an order compelling Limited to participate in the ICC arbitration.[4]

Limited opposes such an order because it maintains it is not amenable to personal jurisdiction in this forum. Limited also insists it cannot be compelled to arbitrate as it was not a party to the 2014 MDSA.

---

[3] The suits accuse the Apple entities of producing certain antennas using Limited's Superenergy Beam Induced Deposition technology without authorization.

[4] Limited has specially appeared in the ICC Arbitration, but only to engage in preliminary matters. It continues to object to the ICC's jurisdiction.

# III. DISCUSSION

## A. Personal Jurisdiction

Motions to dismiss for lack of personal jurisdiction are authorized by Rule 12(b)(2) of the Federal Rules of Civil Procedure. Specific personal jurisdiction over a nonresident defendant may exist if the suit arises out of or relates to the defendant's minimum contacts with the forum such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1946) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Alternatively, there is general jurisdiction where a defendant's contacts with the forum are "so constant and pervasive as to render [the defendant] essentially at home" in the forum state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (internal quotation marks omitted). Fairness requires that a court exercise jurisdiction only if the defendant's forum-related actions are such that "he should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state where the court sits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California's long-arm statute permits the "exercise of jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. P. Code § 410.10.

If personal jurisdiction is challenged, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). The plaintiff, however, need only make a prima facie showing of jurisdiction to defeat the motion to dismiss. *See id.* "A plaintiff may not simply rest on the bare allegations of the complaint." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks omitted). "But uncontroverted allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger*, 374 F.3d at 800).

**1. General Jurisdiction**

Apple submits Limited is subject to general jurisdiction in this forum. The basis for this claim is Apple's contention that "BYD maintains its North America[n] headquarters in Los Angeles, California." Opp'n at 1:19–21. Apple gleaned this information from Limited's company website, where a star on a map and a box with an address suggest a BYD entity resides in Los Angeles. Further, Apple points to *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) for the proposition that a corporation's regional headquarters renders it essentially "at home" in that particular state.

Limited counters that it is not registered to conduct business in California, has no employees in California, maintains no corporate bank accounts, offices, or manufacturing facilities in California, and owns no real or personal property or assets in California. Qian MTD Reply Decl. ¶ 3. Limited maintains that any BYD California-based business is conducted by one of its subsidiaries—BYD America Corporation ("America") or BYD Motors, Inc. ("Motors"). Limited also insists the Los Angeles office on the website is owned and operated by Motors.[5]

Apple has failed to establish general personal jurisdiction over Limited in California. *Daimler* explains that only "in an exceptional case" will "a corporation's operations in a forum other than its formal place of incorporation or principal place of business . . . be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S. Ct. at 761 n.19. Indeed, the *Daimler* Court declined to find general jurisdiction over a parent corporation even though its subsidiary, whose contacts were *imputed* for the Court's analysis, "ha[d] multiple California-based facilities, including a regional office," as Apple presses here. *Id.* at 752. *Daimler* also instructs that courts must appraise a "corporation's activities in their entirety, nationwide and worldwide." *Id.* at 762 n.20. To that end, Limited's California-based subsidiaries employ roughly

---

[5] Limited adds that the addresses for the Chinese offices include the word "Limited" in their titles, whereas the description of the Los Angeles office merely states "BYD North America Headquarter." *See* Dkt. No. 37; Frahn IV Decl. Ex. A. Limited also notes Apple has made no attempt to impute the subsidiaries' contacts to Limited.

300 employees, whereas the entity's Chinese operations employ 180,000. Qian MTD Reply Decl. ¶ 7. In short, recognizing that Limited neither is incorporated nor maintains its principal place of business in California, Apple has not shown that Limited essentially is "at home," "comparable to a domestic enterprise in th[e] state." *Id.* at 758 n.11.

**2. Specific Jurisdiction**

Apple next suggests Limited is amenable to specific jurisdiction in California. The Ninth Circuit utilizes a three-prong test to analyze such claims. First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger*, 347 F.3d at 802. Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* Third, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.*

Sidestepping this analysis, Apple claims jurisdiction lies "by virtue of the arbitration agreement in the 2014 MDSA, which provides that arbitration shall take place in San Francisco, California." Pet. ¶ 6. Apple is correct that "under general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound." *Holland Am. Line Inc., v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (internal citations omitted). The question then is whether Limited, a non-signatory, is bound by the arbitration clause, according to the general principles applied to the formation and construction of contracts.[6] On that score, Apple advances two theories that purport to bind Limited to the 2014 MDSA: agency and estoppel.

---

[6] Importantly, "an agreement to arbitrate is actually a specialized forum selection clause," so the analysis of one is applicable to the analysis of the other. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.4 (9th Cir. 1988). Delaware law applies to the 2014 MDSA, s*ee* 2014 MDSA, Attachment 2, though there is a threshold question whether Limited is bound by the choice of law provision. Conveniently, the relevant analyses are the same under both California and Delaware law, though Delaware law will generally be invoked to the extent possible. *See Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (following law of state picked out by choice of law provision to the extent possible).

**a. Agency**

Apple asserts Precision entered into the agreement as Limited's agent, and therefore consented to the arbitration clause on Limited's behalf. As a preliminary matter, "[a] principal-agent relationship exists when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act." *Kuroda v. SPJS Holdings, L.L.C.*, No. 4030-CC, 2010 WL 4880659, at *5 (Del. Ch. Nov. 30, 2010) (internal quotation marks omitted). An agency relationship may be shown by written or spoken words or by conduct communicated by the principal either to the agent (actual authority) or to a third party (apparent authority). Apple offers four arguments in support of its contention that an agency relationship exists between Limited, the principal, and Precision, the agent, regarding the 2014 MDSA.

First, Apple notes the 2011 MDSA—executed by Limited—"may not be amended or modified except by a written amendment signed by *authorized signatories* of both parties." 2011 MDSA § 16.18 (emphasis added). The 2014 MDSA—executed by Precision—explicitly "amended and restates" the 2011 MDSA. Thus, Apple submits Precision executed the agreement as Limited's authorized signatory. Limited counters the 2014 MDSA is no mere modification; rather, it is a new and separate agreement executed between entirely different parties.[7] As such, in Limited's eyes, Apple has not shown the "authorized signatory" provision even applies to govern the present circumstances.

Second, Apple argues Precision makes representations on Limited's behalf in the text of the 2014 MDSA. Specifically, Section 14.1 provides: "[Precision] represents and warrants on behalf of itself and any Related Entity of [Precision] that: (i) [Precision] has the right to enter into this Agreement and [Precision] and [Precision] Related Entities have the right to grant the rights

---

[7] Though the defined "Parties" to the 2014 MDSA (Apple and Precision) are indeed different than those of the 2011 MDSA (Apple and Limited), the title of the 2014 MDSA is "Amended & Restated Master Development and Supply Agreement Between Apple and BYD Company Limited."

CASE NO. 15-cv-04985-RS

7

and licenses contained herein."[8]  Through this text, Precision warrants it has the right—on behalf of itself and Limited—to enter an agreement superseding the 2011 MDSA, an act that can be accomplished only by an authorized signatory of Limited.  Precision also warrants Limited—its "Related Entity"—can grant the licenses Limited purports to convey to Apple by means of the 2014 MDSA.  Limited responds these provisions do not indicate Precision intended in any way to bind Limited to the terms of agreement's arbitration provision.

Third, Apple asserts the individuals who negotiated the 2014 MDSA held themselves out as representatives of multiple entities, including both Limited and Precision.  Specifically, Lisa Shao was presented as the key manager of a *BYD-wide* "Dedicated Team for Apple," and though she signed the agreement on behalf of Precision, she confirmed "BYD has signed off MDSA in newest form." Kim Decl. Exs. A, B.  Similarly, Linna Shang, an employee not of Precision, but of another subsidiary—America—nevertheless was a principal negotiator of the 2014 MDSA.  Apple adds Sun Yi-zao, a Limited Vice President who signed the 2011 MDSA,[9] met with Apple representatives in 2014 to discuss updating the terms of the contract.  Lastly, Apple avers Shao reported directly to Sun on all Apple matters, suggesting that Sun, a Limited employee, approved Precision's entry into the 2014 MDSA.  Limited responds Shao and Shang do not work for BYD Limited, and maintains Sun's employment is irrelevant because he did not sign the 2014 agreement.  Limited insists neither Shao nor Shang told Apple they were acting on behalf of Limited, or represented they had authority to bind Limited in any way to the updated MDSA.  To the contrary, Shao and Shang argue they made clear to Apple that Precision, and only Precision,

---

[8] Limited does not dispute it is a "Related Entity" to Precision under the agreement.

[9] Sun's business card indicates he is "Vice President" of "BYD Company Limited." Pet. Ex. 8. Limited contends Sun is employed as General Manager at Precision. Sun Decl. ¶ 1. Apple responds Sun serves as Limited's Vice President while "working out of a BYD Precision address." Pet. ¶ 31.  As noted above, inferences must be drawn in favor of Apple at this juncture.  Relatedly, though Limited notes courts generally presume "directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary," *United States v. Bestfoods*, 524 U.S. 51, 69 (1998), the question is whether Sun indeed was acting for the subsidiary.

CASE NO. 15-cv-04985-RS

8

would be a party to the terms of the 2014 MDSA.[10]

Finally, Apple notes the agreement contemplates its provisions would bind entities beyond the named parties, as the "non-assert" provision encompasses "Related Entities" and the arbitration provision captures all claims "arising out of or relating to" the agreement. Limited maintains it neither is a signatory nor a party to the 2014 MDSA, and asserts that had Apple intended to bind Limited to the arbitration provision, Apple would have insisted on having that agreement expressed affirmatively in writing.[11]

All told, Apple adequately has shown Precision acted as Limited's agent, and therefore consented to the 2014 MDSA on Limited's behalf. To begin, the terms of the two MDSA's are an important measure of the parties' intent. Taken together, they strongly suggest Limited authorized Precision to enter the 2014 MDSA. The 2014 contract quite clearly is an update of the earlier agreement—indeed, although Precision substituted for Limited as a named "Party," Limited still appears in the title and in attachments seven and eight. The 2011 MDSA could be amended, however, only by Limited's authorized signatory, suggesting Limited assented to Precision acting on its behalf with respect to the agreement.[12]

The e-mails and declarations also suggest Limited was aware of the contours of the

---

[10] In an email exchange, Shang told Apple representatives: "Company name changes from BYD to BYD Precision Manufacturing Co., Ltd." Shang Decl. Ex. A. Apple replied: "We need clarity on where the entity, BYD Precision Manufacturing, is within your overall corporate structure. Please explain why you need this change." *Id.* Shang responded: "All Apple business is under BYD precision Manufacturing (Div. 3)." *Id.* Though respondents submit this exchange makes clear only Precision would be bound by the contract, Shang plainly refers to Limited as "BYD," undercutting Lisa Shao's representation that her subsequent email referred to Precision. *See* Kim Decl. Ex. B ("BYD has signed off MDSA in newest form this May end.").

[11] Limited leans heavily on *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003) and *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, No. 06-3523, 2007 WL 2153278 (3rd Cir. 2007) for the "sophisticated parties" argument, but the contention undeniably cuts in both directions. Limited itself could have contacted Apple to make clear it would not be bound by any term of the agreement even though the language directly encompasses Limited as a Related Entity and possibly a Supplier Affiliate.

[12] Additionally, Limited makes no argument that the 2011 agreement is still in place, so its contention that the word "restatement" is significant ultimately is unpersuasive.

agreement, and permitted its subsidiaries to make representations to Apple on its behalf. Limited does not dispute Sun Yi-Zao, a Limited employee, participated in the preliminary negotiations of the agreement.[13] Nor does it dispute Lisa Shao, a primary negotiator, reported to Sun Yi-Zao. Further, while it is true Linna Shang informed Apple that Precision would be substituting for Limited in the agreement, this suggests Limited authorized employees of its subsidiaries to speak on Limited's behalf. Indeed, it is unlikely Shang unilaterally decided the substitution was appropriate; rather, the inference to be drawn is that Limited sought that conclusion, and told an agent to proceed with its execution. Apple likely makes too much of the representations in the emails that refer blankly to "BYD." By the same token, Limited did not directly make clear it did not intend to be bound by any terms of the contract. Shang's email evinces Limited did not wish to continue as a named party to the agreement, but it does not quarrel with Limited's status as a "Related Entity," and it plainly establishes that Limited spoke through its subsidiaries.[14]

Adding to all this, Limited does not dispute it is a "Related Entity" according to the text of the agreement. Returning to Section 14.1 then, that provision further suggests Limited agreed to let Precision speak on its behalf. Precision warrants in that clause, *on behalf of Limited* (a "Related Entity"), that Precision has authority to enter the contract, and Limited has the authority to grant the rights and licenses the agreement conveys to Apple. These representations suggest not only that Limited acted through its subsidiary, but that Precision, Limited's agent, agreed to act on Limited's behalf. Though Precision denies it *directly* represented to Apple it was acting on behalf of its parent, Section 14.1, along with the preamble, appear plainly to belie that assertion. This is to say nothing of the "non-assert" provision, where Precision, "on behalf of itself, [and] its Related Entities . . . *who shall be bound as* [Precision]," covenants against asserting intellectual property

---

[13] To be clear, as noted above, Limited disputes his job title, but not that he participated in the negotiations.

[14] In other words, Limited assented to its status as a Related Entity by permitting its agent, Precision, to speak on its behalf. When combined with the textual evidence, the record suggests Limited foresaw and intended that it would be bound in this way.

claims arising out of the agreement. When this textual evidence is considered alongside Sun's participation in the negotiations and the inferences reasonably drawn from the emails and declarations, the record suggests Limited foresaw and intended that it would be bound by the 2014 MDSA.

In sum, Limited did not directly sign the 2014 MDSA. The record reflects, however, Limited elected to act through Precision, who accepted that invitation. Though Limited made clear it was not to be named as a formal party to the agreement, Limited allowed Precision to be so named, and did not object to its correspondent status as a "Related Entity." On balance, Limited manifested assent to an agency relationship, and to be bound as a Related Entity to the 2014 MDSA.[15] To Limited's repeated contention that a party may be bound under an agency theory only by express consent, the answer here is that the record reveals conduct by Limited tantamount to such an expression.[16] Apple accordingly has met its burden to make a prima facie showing that specific jurisdiction over Limited exists. The motion to dismiss under Rule 12(b)(2) must be denied.

### b. Estoppel

Apple contends in the alternative Limited is equitably estopped from denying it is bound

---

[15] Limited's reliance on *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277 (9th Cir. 2009), and *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 1098 (9th Cir. 2007), is misplaced. *Comedy Club* merely held it was inappropriate to bind "Affiliates" who were not in an agency relationship with the contract's signatories. *See Comedy Club*, 553 F.3d at 1287 ("[I]t is not reasonable to preclude from gainful competition in the comedy club sphere relatives of ex-spouses of the CCI principals who were not in an agency relationship with those principals."). That is not the case here. Additionally, in *Holland*, the party pressing for an agency relationship lacked a scintilla of evidence the parent had agreed to be bound by the contract. *See, e.g.*, *Holland*, 485 F.3d at 458 ([T]he allegation is just that, an allegation without any evidence."). The same cannot be said here.

[16] Additionally, the authorities Limited relies on do not support its contention that Limited must expressly have consented to the arbitration provision. *Bridas* held that "[i]f [the subsidiary] indeed signed the [contract] in its capacity as the [principal]'s agent, then the [principal] would be bound by the [contract]'s arbitration requirement." 345 F.3d at 357. Similarly, *Jurimex* stated the relevant inquiry for determining whether a subsidiary was acting as an agent focuses on the "specific transaction" that gave rise to the alleged liability. 2007 WL 2153278 at *2. That transaction here is Precision's entry into the 2014 MDSA, and the textual and other evidence manifests Limited's express consent to be bound.

CASE NO. 15-cv-04985-RS

11

by the contract. Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes. It applies to a non-signatory, like Limited here, "(1) where the non-signatory directly, rather than indirectly, benefitted from the agreement during the course of the agreement's performance," (2) "where the non-signatory consistently maintains that other provisions of the same contract should be enforced to benefit him," or (3) "where the non-signatory sues to enforce the provisions of a contract that it likes, while simultaneously disclaiming the provisions that it does not." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 221 (3d Cir. 2014) (internal quotation marks, citations, and alterations omitted). Delaware law "imposes the burden of producing clear and convincing proof on the party asserting estoppel." *Id.*

Apple argues Limited should be bound by the agreement because the 2014 MDSA references Limited, imposes obligations on Limited, was negotiated in part by its subsidiaries, and confers a benefit on Limited. The benefit Apple invokes is a reduction in Limited's "financial exposure." Apple's theory is that Limited no longer is on the hook to Apple as a supplier; instead, Limited is a "Related Entity" with fewer obligations under the new agreement.

At bottom, Apple has not shown by clear and convincing proof equitable estoppel is appropriate here. Apple does not suggest Limited invoked any provision of the 2014 MDSA. Moreover, the "benefit" identified—a release of business obligations owed to Apple—is passive and indirect. In short, Apple has not met its burden to show equitable estoppel is warranted in the present case.

**B. Motion to Compel Arbitration**

The 2014 MDSA provides "the arbitration clause and any arbitration [t]hereunder shall be governed by the Federal Arbitration Act ["FAA"]." 2014 MDSA Attach. 2. Chapter Two of that statute codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. § 202, and grants jurisdiction over actions falling under the Convention, 9 U.S.C. § 203, as well as authority to compel arbitration in accordance with the agreement, 9 U.S.C. § 206.

To determine whether to enforce an arbitration agreement falling under the Convention, courts ask whether "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship . . . which is considered commercial; and (4) a party to the agreement is not an American citizen." *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009). "If these questions are answered in the affirmative, a court is required to order arbitration unless the court finds the agreement to be null and void, inoperative, or incapable of being performed." *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 988 (N.D. Cal. 1996).

Having concluded Limited is bound to the 2014 MDSA under ordinary agency principles, all four prerequisites are met. First, the 2014 MDSA is an "agreement in writing within the meaning of the Convention."[17] Second, the agreement calls for arbitration to take place in San Francisco, California, and the United States is a signatory to the Convention. Third, the 2014 MDSA involves a commercial relationship because it provides for the development, supply, and support of commercial goods. Finally, both Limited and Precision are Chinese companies. Accordingly, a party to the 2014 MDSA is not an American citizen.

Given a valid arbitration agreement exists, it is appropriate to determine whether the clause encompasses the dispute at issue. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564–65 (9th Cir. 2014). It does. Apple claims Limited breached the "non-assert" provision of the 2014 MDSA, which applies to Limited as a "Related Entity" of a signatory to the agreement. This controversy falls within the arbitration clause because that provision is broadly defined to capture all disputes "arising out of or related to" the 2014 MDSA.[18] Because a valid arbitration agreement

---

[17] An agreement to arbitrate generally falls within the meaning of the Convention if it "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial." 9 U.S.C. § 202.

[18] Limited agrees. *See* MTCA Opp'n at 15:27–16:4 ("[W]ere the Court to find that Limited is somehow bound by the arbitration clause, then the question of whether the Chinese Patent Litigation is within the scope of the agreement is . . . a question that the arbitration panel should consider and resolve with a more developed record.").

encompasses the parties' dispute, Apple's motion to compel arbitration will accordingly be granted.

## IV. CONCLUSION

Apple has met its burden to make a prima facie showing of specific jurisdiction over Limited. The motion to dismiss under Rule 12(b)(2) accordingly must be denied. Additionally, a valid arbitration agreement encompasses the dispute regarding Limited's alleged breach of the "non-assert" provision. Apple's motion to compel arbitration therefore will be granted. With respect to the sealing motions, the following materials appropriately may be filed under seal: the portions of the 2011 and 2014 MDSAs currently filed under seal; the portions of Shang Ex. A quoting and discussing portions of the 2014 MDSA; slides 5-32 of the PowerPoint presentation attached as Exhibit A to the declaration of Ganya Kim; the declaration of Mattia Pascolini; and the brief excerpts quoting from these materials. Within twenty-one (21) days from the date of this order, the parties shall re-file any previously sealed documents that are to be unsealed as directed by this order.

**IT IS SO ORDERED**.

Dated: March 2, 2016

_____
RICHARD SEEBORG
United States District Judge